Town of Stockton and others, Respondents, vs. Dombrowski, Appellant.

*November 13, 1931—February 9, 1932.*

For the appellant there was a brief by *Olin & Butler,* and oral·argument by *Clifford G. Mathys,* all of Madison.

For the respondents there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *W. E. Fisher.*

FAIRCHILD, J. A careful survey of the evidence, somewhat confusing in details because of the method followed by the parties involved in adjusting, from time to time, the matters in difference between the town and the town treasurer, enables us to narrow the facts to certain controlling items. There is no dispute about the fact that the appellant signed the bond of the town treasurer to be effective for the term which began in April, 1923, and ended in April, 1924. One Armatowski, the treasurer, had previously served one term. At the beginning of this his second term appellant became one of his bondsmen. It also seems to be conclusively established that at the close of Armatowski's second term as treasurer a shortage existed and the evidence supports the finding that this shortage at that time amounted to $5,021.46.

Appellant questions the sufficiency of the evidence to sustain a finding that any default occurred during the term for which he was liable as a bondsman; that because of the uncertain state of the record there should be a reversal of the judgment, and questions also the validity of the bond which he signed.

It is necessary to find, first, how much of the town's money the treasurer ought to have had on hand at the beginning of his second term when appellant's liability began.

On March 31, 1923, an attempt was made by the town officials to determine the amount then due from the treasurer. That was the date of the meeting of the town board of audit for the purpose of examining and auditing the accounts separately of each town officer authorized by law to receive or disburse money. The town clerk's records at this time contained a complete list of moneys received and of the liabilities of the town. Had the town treasurer's transactions actually squared with the record kept by the town clerk, the difficulty which the bondsman experiences here would not have occurred. These records of the town

clerk show certain amounts received for the year 1922-1923 up to March 31, 1923, and disclose what would have been a proper disbursement thereof. It is upon these figures, which are sustained by the evidence and apparently correct, that we must depend in arriving at the amount which the town treasurer should have had on hand at the beginning of the term in which the appellant as surety is interested, and these figures show that amount to be $5,935.30. From that and the following items we reach a result from the evidence which leads us to our conclusion.

We find in the bank in the account of the town treasurer and in his possession on March 31, 1923:

| | | |
|---|---|---|
| A balance of | $9,866 84 | |
| County warrants | 2,039 47 | |
| (Not deposited but used as part payment of amount due county treasurer.) | | |
| County treasurer's draft | 2,037 88 | |
| (This draft had not been cashed at the time.) | | |
| A total debit on March 31st of | | $14,944 19 |

At the time he was entitled to credits as follows:

| | | |
|---|---|---|
| By use of county warrants in payment of taxes | $2,039 47 | |
| Check of county treasurer for taxes due county | 3,258 48 | |
| (This check plus the county warrants paid the full amount of the taxes.) | | |
| By check to Citizens National Bank of Stevens Point for note due from town | 4,145 39 | |
| A total credit of | | $9,443 34 |

| | |
|---|---|
| Leaving the treasurer with cash on hand | $5,500 85 |

Thus it appears that the town treasurer was short at the beginning of the second term the sum of $434.50, being the difference between $5,935.30 which he ought to have had on hand, and $5,500.85 which he actually had on hand. But this $434.50 is not all. The county treasurer's draft of $3,037.88 which the town treasurer had in his possession had not been deposited at the time of the accounting.

This was state school funds to be distributed by the town treasurer to the several school districts in the town. The town clerk in his records charged the town treasurer with the receipt of this draft and credited him with its disbursement. This draft, however, was not received until March 29th, and even if he had promptly deposited it it could hardly have been distributed in time to have entitled the town treasurer to the credit given him by the town clerk and have left him the bank balance claimed. If this money was not distributed and drawn from the bank before March 31st, the shortage accruing during the first term of the town treasurer would be enlarged by that amount ($3,037.88), and would be in that event $3,472.33. The respondents must produce enough evidence and of positive enough quality to be a proper matter of consideration to form a reasonable basis for a finding that the proceeds of the draft delivered on the 29th of March were disbursed according to law and that there still remained a balance in the bank of $9,866.84 on March 31st, or the appellant ought not to be held responsible for that amount. This results from yielding, as we must, to the force of the rule which affects the respondents' duty to produce evidence from which the amount due from the appellant can be ascertained. It is not at all likely that the payment to the school district treasurers of these moneys which made up the total of $3,037.88, was made before the town treasurer received the draft or before he deposited it, or that he had issued checks to the respective districts against that item in time so that they would have found their way back to the bank to be reflected in the balance on March 31st.

From the foregoing it appears that a default occurred during the first term of Armatowski as town treasurer, and that at the close of his first term, before the appellant was placed in a position where he was responsible, a shortage already existed amounting to $3,472.33.

We feel that under the evidence sufficient reason exists for accepting as final the determination that the shortage at the end of the second term was $5,021.46, and it follows that the shortage which occurred during the second term for which appellant is responsible amounts to the difference between that amount and $3,472.33 and does not exceed $1,549.13.

We find nothing in the record to interfere with this disposition of the questions of fact or with a direction for the entry of the proper judgment in accordance therewith. Sec. 251.09, Stats.

The bond sued on is in all respects in accordance with the requirements of sec. 19.01. The appellant, when he signed it, knew that the law required the bond, and it is unquestioned that the law in force at the time is a part of the contract which he entered into with the town. The meaning of the language used, fairly construed, creates a good and sufficient bond capable of accomplishing the security designed by the legislature and for which the appellant offered himself and his credit. Having been executed pursuant to and in substantial conformity with the requirements of the statute, no consideration need be expressed. There is no reason why the provisions of this statute should not control.

From the established facts we are of the opinion that no judgment against the appellant is proper which allows the respondents more than $1,549.13.

*By the Court.*—Judgment modified by reducing the same to the sum of $1,549.13, and as modified affirmed. The appellant to have his costs.

NELSON, J., took no part.